1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PAUL ROBERTS,                            Case No. 1:21-cv-00506-ADA-CDB (PC)

12                  Plaintiff,                **FINDINGS AND RECOMMENDATIONS TO**
                                              **DISMISS CERTAIN CLAIMS AND**
13         v.                                 **DEFENDANTS IN PLAINTIFF'S FIRST**
                                              **AMENDED COMPLAINT**
14   GAVIN NEWSOM, et al.,

15                  Defendants.               (Doc. 20)

16                                            **14-DAY OBJECTION PERIOD**

17        Plaintiff Paul Roberts is a state prisoner proceeding *pro se* in this civil rights action

18   brought pursuant to 42 U.S.C. § 1983.

19         **I.      INTRODUCTION**

20        On May 4, 2022, the Court issued its First Screening Order. (Doc. 17.) The Court found

21   Plaintiff had stated the following cognizable claims: (1) deliberate indifference to serious medical

22   needs against defendants Lemus and Gilman; (2) deliberate indifference to serious medical needs

23   against defendants Delgadillo and Gilman; and (3) excessive force against defendants John Doe

24   #1 and John Doe #2. (*Id.* at 25.) Plaintiff failed to state any other cognizable claim against any

25   named defendant. (*Id.*) Plaintiff was granted leave to file a first amended complaint or to file a

26   notice of voluntary dismissal. (*Id*. at 26.)

27        On May 20, 2022, Plaintiff filed a first amended complaint. (Doc. 20.)

28   //

## II.     SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III.     PLEADING REQUIREMENTS

### A.  Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id.* (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of *pro se* prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal

1   quotation marks & citation omitted), and courts "are not required to indulge unwarranted

2   inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation

3   marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not

4   sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's

5   liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

6                           **B.  Linkage and Causation**

7           Section 1983 provides a cause of action for the violation of constitutional or other federal

8   rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under

9   section 1983, a plaintiff must show a causal connection or link between the actions of the

10  defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*,

11  423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the

12  deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative

13  act, participates in another's affirmative acts, or omits to perform an act which he is legal required

14  to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740,

15  743 (9th Cir. 1978) (citation omitted).

16                          **C.  Supervisory Liability**

17          Liability may not be imposed on supervisory personnel for the actions or omissions of

18  their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g.,*

19  *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to

20  adduce evidence the named supervisory defendants "themselves acted or failed to act

21  unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v.*

22  *C'nty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934

23  (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section

24  1983 there must be a showing of personal participation in the alleged rights deprivation: there is

25  no respondeat superior liability under section 1983").

26          Supervisors may be held liable only if they "participated in or directed the violations, or

27  knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th

28  Cir. 1989). "The requisite causal connection may be established when an official sets in motion a

1    'series of acts by others which the actor knows or reasonably should know would cause others to

2    inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  Accord

3    *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on

4    inaction in the training and supervision of subordinates).

5         Supervisory liability may also exist without any personal participation if the official

6    implemented "a policy so deficient that the policy itself is a repudiation of the constitutional

7    rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942

8    F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other*

9    *grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

10        To prove liability for an action or policy, the plaintiff "must ... demonstrate that his

11   deprivation resulted from an official policy or custom established by a ... policymaker possessed

12   with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d

13   707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between

14   such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v.*

15   *Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the

16   involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v.*

17   *Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

18        **IV.    DISCUSSION**

19             **A.  Plaintiff's First Amended Complaint**

20        Plaintiff's first amended complaint identifies the following individuals as defendants:

21             Governor Gavin Newsom

22             Secretary of the California Department of Corrections and
             Rehabilitation (CDCR)
23

24             Warden of the California Institute for Men (CIM)

25             Warden of the Corcoran State Prison (CSP)

26             Muhammad Farooq, Chief Medical Executive, CIM

27             Kirk Torres, Chief Medical Surgeon, CIM

28             G. Gilman, Correctional Lieutenant, CIM

4

1    Delgadillo, Correctional Officer, CIM

2    J. Lemus, Correctional Officer, CIM

3    M. Pilkerton, Correctional Lieutenant, CSP

4    J. Gonzalez, Correctional Officer, CSP

5    John Doe #1, Correctional Officer, CSP

6    John Doe #2, Correctional Officer, CSP

7    (Doc. 20 at 1, 3-5.) Plaintiff presents four claims. (*Id.* at 5-21.) The Court will address each claim

8    in the order presented and will summarize Plaintiff's factual allegations in its analysis of those

9    claims.

10    Plaintiff seeks to be identified "as particularly vulnerable to contracting COVID and other

11    communicable diseased because of his environment and require defendants to permanently

12    'single cell status' Plaintiff." (Doc. 20 at 7.) Further, Plaintiff seeks compensatory damages of

13    $10,000 from each defendant and punitive damages of $10,000 from each defendant. (*Id.*)

14    Plaintiff also seeks reversal of a "rules violations guilty finding." (*Id.*)

15    **B. Plaintiff's Claims**

16    <u>**Claim One**</u>

17    Plaintiff's first cause of action is titled "Right to Medical Care; Freedom from Cruel and

18    Unusual Punishment; ADA Discrimination." (Doc. 20 at 5.) The Court construes the cause of

19    action to assert Eighth Amendment claims for deliberate indifference to serious medical needs.

20    ***The Facts Alleged***

21    Plaintiff contends that from August 1, 2017 to April 21, 2020, he was assigned as the

22    facility barber on Facility C at CIM. (Doc. 20 at 5.) Following the World Health Organization's

23    classification of COVID-19 as a worldwide pandemic, on March 18, 2020, Governor Newsom

24    issued an executive order directing California residents to shelter in place. (*Id.* at 6.) That order

25    prohibited non-essential operations, including barbering within state prisons. (*Id.*) Plaintiff

26    contends from March 19, 2020 through April 14, 2020, Defendant CIM warden and Defendant

27    Gilman "facilitated and personally supervised a series of mass bed moves between three different

28    yards, and eight different housing units at CIM, in direct conflict with" Newsom's executive

1    order. (*Id*. at 6, 8.) During that time, the CIM warden and Gilman "created, and personally

2    supervised the creating of a makeshift dorm in the Facility 'C' Gymnasium," rehousing dozens of

3    inmates who were high risk for contracting COVID, including Plaintiff. (*Id*. at 8.) Plaintiff

4    informed Gilman of his prescription for and need of a Continuous Positive Air Pressure (CPAP)

5    device and that the makeshift dorm lacked the necessary electrical outlets for its use. (*Id*.)

6    Plaintiff contends his assigned bed was within two feet of two other inmates who were assigned

7    as porters in a "quarantine[d] COVID infected housing unit." (*Id*.) Those inmates further exposed

8    Plaintiff to the dangers of contracting COVID. (*Id*. at 8-9.)

9        Plaintiff contends he is 62 years old, mobility impaired, and suffers from COPD with

10    emphysema, congestive heart failure, hypertension, obesity, and atrial fibrillation. (Doc. 20 at 8.)

11    He requires the use of a CPAP device. (*Id*.) Plaintiff asserts he is "an Armstrong Class Member

12    and is identified as high risk for serious illness and death from COVID infection because of his

13    medical condition and advanced age." (*Id*.) As a result of being unable to use his CPAP machine,

14    Plaintiff suffered severe headaches from a lack of oxygen to his brain, sleep deprivation, and

15    extreme anxiety. (*Id*. at 9.)

16        Plaintiff asserts that between March 19, 2020 and April 14, 2020, Defendant Gilman

17    rehoused Plaintiff on six different occasions into four different buildings. (Doc. 20 at 9.) While

18    most inmates were housed in a particular cell, Plaintiff contends that with each move he was

19    housed with a different, unfamiliar inmate. (*Id*.)

20        Next, Plaintiff contends that on March 20, 2020, he asked to be excused from his

21    barbering duties pursuant to Newsom's executive order due to a fear of exposure to COVID.

22    (Doc. 20 at 9.) Plaintiff asserts he explained to Defendant Delgadillo that "Plaintiff did not have

23    protective equipment, was afraid of contracting or spreading COVID, and reminded Delgadillo

24    of" the executive order. (*Id*.) Delgadillo demanded Plaintiff continue to perform barbering duties,

25    and when Plaintiff refused, Delgadillo issued a disciplinary report, asserting Plaintiff failed to

26    perform his assignment. (*Id*. at 10.) Delgadillo advised Plaintiff to resume barbering duties or face

27    progressive disciplinary action. (*Id*.) When approached by Plaintiff, Defendant Gilman also

28    directed Plaintiff to return to his assignment, "falsely claiming" the executive order did not apply

1  to inmates. (*Id.*) Plaintiff immediately filed a grievance requesting his barbering duties be

2  suspended to avoid unreasonable exposure to COVID and "reluctantly resumed" the assignment

3  to avoid further disciplinary action. (*Id.*) On March 25, 2020, Plaintiff appealed the issuance of

4  the disciplinary report. (*Id*.) On March 27, 2020, Defendant Gilman "finally suspended the duties

5  of all facility barbers, including Plaintiff." (*Id.*)

6          Plaintiff alleges Defendants Gilman and Delgadillo acted with deliberate indifference to

7  his serious medical needs by acting contrary to the executive order to shelter in place, "contrary to

8  CDCR's operational procedures for the control of an infectious disease" and for deliberately

9  violating the executive order and threatening Plaintiff with further disciplinary action. (Doc. 20 at

10  10-11.) Plaintiff further asserts Defendant Gilman acted with deliberate indifference to Plaintiff's

11  serious medical needs by rehousing Plaintiff to a location that did not allow for his use of the

12  CPAP machine. (*Id*. at 11.) Plaintiff contends the CIM warden "sustained a custom of allowing

13  staff under her authority to violate policy without fear of disciplinary action, and that said custom

14  is directly attributable to the rights of plaintiff being violated by Gilman and Delgadillo." (*Id*.)

15                               ***The Applicable Legal Standards***

16          The Eighth Amendment protects prisoners from inhumane methods of punishment and

17  from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir.

18  2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual

19  Punishments Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)

20  (citations omitted). Although prison conditions may be restrictive and harsh, prison officials must

21  provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.

22  *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quotations omitted)

23          Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a

24  prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need

25  is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton

26  infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v.

27  Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059

28  (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th

1    Cir. 1997) (en banc)).

2          To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must

3    first "show a serious medical need by demonstrating that failure to treat a prisoner's condition

4    could result in further significant injury or the unnecessary and wanton infliction of pain.  Second,

5    the plaintiff must show the defendants' response to the need was deliberately indifferent."

6    *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096

7    (quotation marks omitted)).

8          As to the first prong, indications of a serious medical need "include the existence of an

9    injury that a reasonable doctor or patient would find important and worthy of comment or

10   treatment; the presence of a medical condition that significantly affects an individual's daily

11   activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060,

12   1066 (9th Cir. 2014) (citation & internal quotation marks omitted).

13         As to the second prong, deliberate indifference is "a state of mind more blameworthy than

14   negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or

15   safety.'"  *Farmer*, 511 U.S. at 835 (1994) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)).

16   Deliberate indifference is shown where a prison official "knows that inmates face a substantial

17   risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."

18   *Id*. at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a

19   prisoner's pain or possible medical need and (b) harm caused by the indifference.  *Wilhelm*, 680

20   F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096).  "A prisoner need not show his harm was

21   substantial; however, such would provide additional support for the inmate's claim that the

22   defendant was deliberately indifferent to his needs."  *Jett*, 439 F.3d at 1096, citing *McGuckin*, 974

23   F.2d at 1060.

24         Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060

25   (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from

26   which the inference could be drawn that a substantial risk of serious harm exists,' but that person

27   'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison

28   official should have been aware of the risk, but was not, then the official has not violated the

1   Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe,*

2   *Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

3       To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted

4   from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122.

5                               *Analysis*

6       As to all Defendants that are the subject of Plaintiff's first claim, Plaintiff has met the first

7   prong of the deliberate indifference test by alleging the presence of a medical condition that

8   significantly affects his daily activities, alleging he is mobility impaired, suffers from COPD with

9   emphysema, congestive heart failure, hypertension, obesity, and atrial fibrillation, and requires

10  the use of a CPAP machine. *Colwell*, 763 F.3d at 1066.

11      As to the second prong of the deliberate indifference test—a purposeful act or failure to

12  respond to a prisoner's pain or possible medical need by a prison official and harm caused by the

13  indifference—Plaintiff has stated a plausible claim against the CIM Warden and Defendant

14  Gilman by asserting they "facilitated and personally supervised" various housing moves that

15  exposed Plaintiff to a serious, communicable disease, knowing Plaintiff was more susceptible as a

16  result of his serious medical condition. *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (finding

17  prison officials may not "be deliberately indifferent to the exposure of inmates to a serious,

18  communicable disease"); *Hutto v. Finney*, 437 U.S. 678, 682-83 (1978) (affirming a finding of an

19  Eighth Amendment violation where a facility housed its individuals in crowded cells with others

20  suffering from infectious diseases). Plaintiff has also plausibly alleged deliberate indifference to

21  serious medical needs claims against Defendants Delgadillo and Gilman for requiring Plaintiff to

22  continue to perform barbering duties or risk further discipline, with knowledge of Plaintiff's

23  concerns and medical condition, where as a facility barber Plaintiff was further exposed to

24  COVID and its attendant risks, causing Plaintiff pain and suffering, and "emotional and

25  psychological harm to his mental health." *Helling*, 509 U.S. at 33. Lastly, Plaintiff has plausibly

26  alleged a deliberate indifference claim against Defendant Gilman because Gilman failed to

27  respond to Plaintiff's medical need of a working CPAP machine and Plaintiff suffered severe

28  headaches from a lack of oxygen, sleep deprivation and extreme anxiety. *Farmer*, 511 U.S. at

835, 847; *Wilhelm*, 680 F.3d at 1122.

In sum, Plaintiff has plausibly stated deliberate indifference to serious medical needs claims against Defendants CIM warden, Delgadillo and Gilman.

**Claim Two**

Plaintiff's second cause of action is titled "Freedom from Cruel and Unusual Punishment; Right to Medical Care; ADA Discrimination." (Doc. 20 at 6.) The Court construes this cause of action to assert Eighth Amendment failure to protect claims.

***The Facts Alleged***

Here, Plaintiff contends that on March 23, 2020, two correctional officers at CIM tested positive for COVID. (Doc. 20 at 6.) He asserts that on or about March 28, 2020, the California Department of Corrections and Rehabilitation (CDCR) issued a "lock-down order to the CIM's warden directing that all inmates were to be provided meals in their cells." (*Id*.) Plaintiff contends Defendant Gilman deliberately avoided the CDCR directive and continued to feed all inmates on Facility C in the dining room, "rotating groups of 50 plus inmates from four separate buildings." (*Id*.) Plaintiff asserts the CIM Warden personally observed "hundreds of inmates eating in rotation in the dining room," but failed to enforce the CDCR directive and ignored her "legal duty to correct the non compliance." (*Id*. at 6-7.) Plaintiff adds that he attempted to wear a face covering in the dining room to protect himself from exposure to COVID but was instructed not to do so "because of a directive issued to staff by Gilman." (*Id*. at 7.)

Further, Plaintiff contends that on April 8, 2020, CDCR's Health Care Services Director issued a directive requiring all wardens, including the CIM warden, to reclassify and rehouse "identified inmates, including Plaintiff, to single cell housing, unless the inmate voluntarily suspended use of his" CPAP machine because that device "dramatically enhance[ed] transmissibility of COVID." (Doc. 20 at 7, 12.) Plaintiff alleges "160 cells" were available on Facility C to "accommodate the approximately 15 inmates, including Plaintiff, medically prescribed" a CPAP machine. (*Id*. at 12.) Plaintiff contends that instead of being moved to a single cell, on April 9, 2020, Defendants Farooq and Torres, the chief executive officer and chief physician at CIM, respectively, "issued an unauthorized memorandum directing all inmate[s] at

10

1  CIM, including Plaintiff, to suspend all use of" CPAP machines, contrary to the April 8 directive

2  and in the absence of a medical consultation or Plaintiff's willingness to suspend use of his CPAP

3  machine. (*Id*.)

4  Next, Plaintiff contends that on April 9, 2020, CDCR issued a directive mandating all staff

5  and inmate wear face coverings to slow the spread of COVID. (Doc. 20 at 12.)  Staff issued three

6  masks to each inmate. (*Id*.) However, Plaintiff contends "numerous inmates and staff, including

7  Lemus, Gilman, and Delgadillo, failed to wear a mask when interacting with inmates thereby

8  spreading the COVID." (*Id*.) Plaintiff asserts that the CIM warden, while "touring Facility C"

9  "personally observed gross compliance with the directive yet failed to act to require inmates and

10  staff to wear masks they had been issued." (*Id*.)

11  Further, Plaintiff contends Defendant Lemus refused to wear a mask while interacting

12  with Plaintiff on April 14, 2020 and confiscated Plaintiff's CPAP electrical cord, rendering the

13  CPAP device inoperable. (Doc. 20 at 12.) On April 16, 2020, Plaintiff filed a grievance to "regain

14  use" of his CPAP device and filed medical requests on April 17 and 19, 2020 due to severe

15  headaches from a lack of oxygen to his brain, sleep deprivation, and extreme anxiety caused by

16  not having access to and use of his CPAP device. (*Id*. at 12-13.) Plaintiff further contends that

17  San Bernardino County officials issued an executive order on April 20, 2020, requiring all county

18  residents to wear a mask to slow the spread of COVID and that despite that directive Defendants

19  Gilman, Lemus, Delgadillo "and numerous other staff deliberately refused to wear their masks."

20  (*Id*. at 13.) Plaintiff asserts that the CIM Warden observed the non-compliance "during her

21  weekly, and sometimes daily tours of Facility C," but that she "failed to act to require staff and

22  inmates" to comply with mask mandates. (*Id*.) On April 22, 2020, Defendant Lemus failed to

23  wear his mask during a meeting in a private office concerning Plaintiff's CPAP device. (*Id*.)

24  Plaintiff contends his CPAP electrical cord was returned to him on April 30, 2020 and "he was

25  immediately reclassified and placed into single cell status." (*Id*.)

26  Plaintiff also contends that on May 13, 2020, more than 60 inmates tested positive for

27  COVID and that despite "the obvious outbreak" and executive orders in place, Defendants

28  Gilman, Delgadillo and Lemus continued to ignore directives and fed inmates in "50 plus groups

1   in the dining room" and that the CIM warden personally observed meal operations during weekly

2   tours of Facility C without taking any action. (Doc. 20 at 13.) By May 26, 2020, CIM reported

3   643 positive COVID cases, "far more than any other institution." (*Id*. at 14.) Plaintiff contends

4   Defendants CIM warden, Gilman, Delgadillo and Lemus acted with deliberate indifference and

5   failed to protect Plaintiff by subjecting him to an unreasonable risk of serious harm or death

6   "through an unnecessary and excessive" exposure to COVID. (*Id*.) He also alleges Defendants

7   Farooq and Torres were deliberately indifferent, "and discriminated against Plaintiff based on his

8   disability, and failed to protect Plaintiff by interfering with prescribed medical treatment" and

9   CDCR directives, restricting his use of his CPAP device. (*Id*.) Plaintiff alleges Defendant Lemus

10   acted with deliberate indifference "and discriminated against Plaintiff based on his disability, and

11   failed to protect Plaintiff by interfering with prescribed medical treatment, and in violation of a

12   directive of CDCR, and in violation of the ADA, when he confiscated Plaintiff's" CPAP device

13   electrical cord. (*Id*. at 14-15.) Plaintiff alleges that Defendant CIM warden "continued to sustain a

14   custom of allowing stuff under her authority to violate policy without fear of disciplinary action,

15   and that said custom is directly attributable to the rights of Plaintiff being violated by Gilman,

16   Delgadillo, and Lemus." (*Id*. at 15.) Plaintiff contends because of these actions, he suffers "pain,

17   discomfort, suffering" and emotional and psychological harm. (*Id*.)

18                        ***The Applicable Legal Standards***

19         Prison officials have a duty "to take reasonable measures to guarantee the safety of

20   inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v.*

21   *Corrections Corp. of America,* 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer*, 511 U.S. at

22   832-33, and *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of

23   this duty, a prisoner must "show that the officials acted with deliberate indifference to threat of

24   serious harm or injury to an inmate." *Labatad*, 714 F.3d at 1160 (citing *Gibson v. County of*

25   *Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

26         A failure to protect claim under the Eighth Amendment requires a showing that "the

27   official [knew] of and disregard[ed] an excessive risk to inmate ... safety." *Farmer*, 511 U.S. at

28   837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of

1   fact subject to demonstration in the usual ways, including inference from circumstantial evidence,

2   ... and a factfinder may conclude that a prison official knew of a substantial risk from the very

3   fact that the risk was obvious." *Id.* at 842 (citations omitted). The duty to protect a prisoner from

4   serious harm requires that prison officials take reasonable measures to guarantee the safety and

5   well-being of the prisoner. *Id*. at 832-33; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). As

6   "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," plaintiff

7   must allege facts showing the defendant acted with a "sufficiently culpable state of mind." *Wilson*

8   *v. Seiter,* 501 U.S. 294, 297 (1991) (internal quotations marks, emphasis, and citations omitted).

9       Title II of the Americans with Disabilities Act (ADA) prohibits a public entity from

10  discriminating against a qualified individual with a disability on the basis of disability. 42 U.S.C.

11  § 12132 (1994); *Weinrich v. L.A. County Metro Transp. Auth*., 114 F.3d 976, 978 (9th Cir.), cert.

12  denied, 522 U.S. 971 (1997). The Supreme Court has held that Title II of the ADA applies to state

13  prisons. *Pennsylvania Dept. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *see also Lee v. City of*

14  *L.A.*, 250 F.3d 668, 691 (9th Cir. 2001).

15      "Generally, public entities must 'make reasonable modification in policies, practices, or

16  procedures when the modifications are necessary to avoid discrimination on the basis of

17  disability, unless the public entity can demonstrate that making the modifications would

18  fundamentally alter the nature of the service, program, or activity.'" *Pierce v. County of Orange*,

19  526 F.3d 1190, 1215 (9th Cir. 2008).

20      To state a claim under Title II, the plaintiff must allege four elements: (1) the plaintiff is

21  an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive

22  the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either

23  excluded from participation in or denied the benefits by the public entity; and (4) such exclusion,

24  denial of benefits or discrimination was by reason of the plaintiff's disability. *Simmons v. Navajo*

25  *County, Ariz*, 609 F.3d 1011, 1021 (9th Cir. 2010); *Weinrich*, 114 F.3d at 978.

26      Furthermore, "[t]o recover monetary damages under Title II of the ADA, a plaintiff must

27  prove intentional discrimination on the part of the defendant." *Duvall v. County of Kitsap*, 260

28  F.3d 1124, 1138 (9th Cir. 2001). The standard for intentional discrimination is deliberate

1    indifference, "which requires both knowledge that a harm to a federally protected right is

2    substantially likely, and a failure to act upon that likelihood." *Id.* at 1139. For a claim under the

3    ADA to be successful, the plaintiff must both "identify 'specific reasonable' and 'necessary'

4    accommodations that the state failed to provide" and show that the defendant's failure to act was

5    "a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.* at

6    1140. Although "[t]he ADA prohibits discrimination because of disability," it does not provide a

7    remedy for "inadequate treatment for disability." *Simmons*, 609 F.3d at 1022 (citing *Bryant v.*

8    *Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply

9    failing to attend to the medical needs of its disabled prisoners .... The ADA does not create a

10   remedy for medical malpractice")).

11                                        *Analysis*

12            Liberally construing the first amended complaint, the Court finds Plaintiff has plausibly

13   alleged Eighth Amendment failure to protect claims against all Defendants specifically identified

14   in the second cause of action. More particularly, concerning Defendant CIM warden, Plaintiff has

15   plausibly alleged failure to protect claims for the CIM warden's failure to protect Plaintiff from

16   serious harm by refusing to take action to prevent the spread of COVID by allowing inmates to

17   dine in the dining hall despite a CDCR directive requiring in-cell feeding and by allowing staff to

18   ignore mask mandates, having personal knowledge of these events and the risks, and in disregard

19   thereof. Further, Plaintiff has plausibly alleged failure to protect claims against Defendant Gilman

20   for Gilman's actions concerning the dining hall and refusal to wear a mask with knowledge of the

21   risk presented and disregard of the risk. Plaintiff has also plausibly alleged a failure to protect

22   claim against Defendant Delgadillo for Delgadillo's failure to wear a mask and against Defendant

23   Lemus for Lemus's failure to wear a mask and confiscation of the electrical cord for Plaintiff's

24   CPAP machine with knowledge of the risk presented and in disregard of the risk. Finally, Plaintiff

25   has plausibly alleged failure to protect claims against Defendants Farooq and Torres, alleging

26   both disregarded CDCR directives by issuing a countermanding memorandum that prohibited

27   Plaintiff from the single cell status to which he was otherwise entitled, knowing the risks

28   presented to users of CPAP machines, including Plaintiff, and ignoring that risk. *Farmer*, 511

1    U.S. at 832-33, 837, 842.

2           However, even liberally construing the first amended complaint, Plaintiff has failed to

3    state an ADA claim against any Defendant. This is so because while Plaintiff generally alleges he

4    is disabled—the first required element of such a claim—Plaintiff has failed to adequately allege

5    the three other required elements for an ADA claim—that he is otherwise qualified to participate

6    in or receive the benefit of some public entity's services, programs, or activities; exclusion from

7    participation in or denial of the benefits by the public entity; and that such exclusion, denial of

8    benefits or discrimination was by reason of the plaintiff's disability. *Iqbal*, 556 U.S. at 678

9    (detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause

10   of action, supported by mere conclusory statements, do not suffice"). Further, Plaintiff has not

11   demonstrated deliberateness based upon his disability. *Duvall*, 260 F.3d at 1140. At most,

12   Plaintiff has demonstrated inadequate treatment for disability, but that is insufficient. *Simmons*,

13   609 F.3d at 1022.

14          To summarize, Plaintiff has plausibly alleged failure to protect claims against Defendants

15   CIM warden, Delgadillo, Farooq, Gilman, Lemus and Torres. However, Plaintiff has failed to

16   allege any other cognizable claim against any other defendants in his second cause of action.

17                                    **<u>Claim Three</u>**

18          Plaintiff's third cause of action is titled "Due Process; Equal Protection; Cruel and

19   Unusual Punishment." (Doc. 20 at 15.) The Court construes this cause of action to assert due

20   process and equal protection violations and Eighth Amendment failure to protect claims.

21                                    ***The Facts Alleged***

22          Plaintiff contends that on May 28, 2020, "the Secretary of CDCR authorized Plaintiff to

23   be transferred to Corcoran State Prison where he was housed on a yard also housing Level 4

24   security inmates;" Plaintiff is a Level 2 inmate. (Doc. 20 at 15.) He contends this was done in the

25   absence of Plaintiff being tested for COVID, "without a classification action, and without

26   interview concerning Plaintiff's medical condition and 'cocci' restricted medical status." (*Id.*)

27   Plaintiff asserts Corcoran is a "COCCI restricted prison by the CDCR, and CDCR regulations

28   prohibit level 2 and level 4 custody inmates to be house in the same yard." (*Id.*) Plaintiff contends

1   the transfer was unnecessary "under such extremely dangerous conditions, in close proximity to

2   other inmates who had also not been tested for COVID, and being confined into an enclosed bus

3   for hours" that exposed Plaintiff to an unreasonable risk of serious harm or death. (*Id*. at 15-16.)

4   Plaintiff contends the move was done "without due process of a classification hearing, medical

5   evaluation, or without fair notice to Plaintiff as by CDCR regulations." (*Id*. at 16.) At arrival to

6   Corcoran, Plaintiff was placed in a small room with "19 other non tested inmates again or hours."

7   (*Id*.)

8           On or about June 19, 2020, and later on July 12, 13, 14 and 19, 2020 "and at many other

9   times," Defendants J. Gonzales[1] and M. Pilkerton "and countless other correctional staff" violated

10  CDCR directives by failing to wear facial coverings while interacting with inmates, including

11  Plaintiff. (Doc. 20 at 16.) Plaintiff asserts that on July 19, 2020, "five of nine correctional staff

12  were not wearing facial coverings when in front of the medical clinic searching inmates,

13  including Plaintiff." (*Id*.) When Plaintiff complained and noted the CDCR directive and state-

14  issued mandate, Defendant Gonzales and others "responded that COVID was 'just a hoax,' 'not

15  real', or 'nothing to be concerned about.'" Plaintiff asserts one staff member "claimed that

16  COVID would all go away as soon as President Trump was reelected." (*Id*.)

17          On July 20, 2020, Plaintiff filed a grievance concerning staff non-compliance with mask

18  mandates. (Doc. 20 at 16.) On July 25, 2020, Defendant Gonzales and others "made threatening

19  comments about the grievance Plaintiff had filed stating, 'it looks like you're going to be a

20  problem,' and 'we know how to deal with problems.'" (*Id*.) The next day, Gonzales issued

21  Plaintiff and another inmate a disciplinary report for failing to socially distance from one another.

22  (*Id*.) Plaintiff contends other inmates in the building were not required to socially distance. (*Id*. at

23  16-17.) Plaintiff asserts that CDCR has not ordered nor issued instructions "for when and where

24  social distancing was required, arguably because of the structural barriers of social distancing in

25  prison." (*Id*. at 17.)

26          On August 15, 2020, Defendant Pilkerton held a disciplinary hearing where Pilkerton

27  ───────────────

28  [1] Plaintiff initially spells the defendant's surname "Gonzalez." (*See* Doc. 20 at 4.) Nevertheless, more than
    a dozen subsequent references are spelled "Gonzales."

1    refused to wear a mask. (*Id.*) When Plaintiff informed Pilkerton at the beginning of the hearing

2    that he "had an effective communication disability" as documented in his prison file, Pilkerton

3    responded "'Yea I don't see one,' making no effort to verify Plaintiff's reasonable

4    accommodation." (*Id.*) Plaintiff contends he sought to present evidence that social distancing was

5    not a chargeable offense and that CDCR had not issued instructions concerning where and when

6    inmates should practice social distancing. (*Id.*) Plaintiff requested four inmate witnesses to

7    provide supporting evidence that statements made by Defendant Gonzales during the hearing

8    were false and that Gonzales' version of event could not have happened as claimed. (*Id.*)

9    Pilkerton denied three of Plaintiff's four requested witnesses, refused to accept evidence that

10   failing to socially distance was not a chargeable offense, refused to accept credible evidence

11   supporting Plaintiff's version of events, and denied Plaintiff his approved reasonable

12   accommodation. (*Id.*) Plaintiff asserts Pilkerton denied him his constitutionally protected right to

13   due process and discriminated against him based solely on his disability when he denied

14   Plaintiff's approved reasonable accommodation. (*Id.*)

15          Pilkerton found Plaintiff guilty of failing to socially distance and assessed a 30-day loss of

16   credits and 30-day loss of dayroom privileges, that "effectively resulted in 30 days of unlawful

17   confinement, even denying Plaintiff the opportunity to" shower. (*Id.* at 17-18.) Plaintiff contends

18   the inmate who was also issued a disciplinary report on the same date—Inmate Conley—was

19   treated differently; Conley's disciplinary report was dismissed without a hearing and Conley was

20   found not guilty "for lack of evidence that socially distancing is a chargeable offense." (*Id.* at 18.)

21   Plaintiff contends this supports his claim that the disciplinary action against him was in retaliation

22   for his having filed a grievance against Defendant Gonzales. (*Id.*) Plaintiff further asserts that

23   Gonzales "publicly shamed Plaintiff by displaying an unauthorized sign outside Plaintiff's cell

24   door which read, 'My actions put me here.'" (*Id.*)

25          Plaintiff appealed the guilty finding on August 31, 2020 and states "the disciplinary

26   finding of guilt was never addressed outside of Corcoran on the merits" because the time limits

27   were exceeded at the Director's Level of Review. (Doc. 20 at 18.) Plaintiff asserts Defendants

28   Gonzales and Pilkerton acted with deliberate indifference and failed to protect him from an

17

1   unreasonable risk of serious harm or death from exposure to COVID by refusing to wear masks.

2   (*Id*.) He further contends Pilkerton violated his due process rights by denying Plaintiff's request

3   for witnesses at the disciplinary hearing, rejecting credible evidence of innocence, "attempting to

4   intim[id]ate Inmate Conley," and by denying Plaintiff's authorized reasonable accommodation.

5   (*Id*. at 18-19.) As a result, Plaintiff suffered pain and discomfort and emotional and psychological

6   harm. (*Id*. at 19.)

7                              ***The Applicable Legal Standards***

8          Where an applicable legal standard has already been provided herein, the standard or

9   standards will not be repeated.

10         The Equal Protection Clause requires that persons who are similarly situated be treated

11   alike. *City of Cleburne v. Cleburne Living Center, Inc*., 473 U.S. 432, 439 (1985); *Hartmann v.*

12   *California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013). To state a claim, a

13   plaintiff must show that defendants intentionally discriminated against him based on his

14   membership in a protected class. *Hartmann*, 707 F.3d at 1123.

15         If the action in question does not involve a suspect classification, a plaintiff may establish

16   an equal protection claim by showing that similarly situated individuals were intentionally treated

17   differently without a rational relationship to a legitimate state purpose. *Engquist v. Oregon*

18   *Department of Agriculture*, 553 U.S. 591, 601-02 (2008). To state an equal protection claim under

19   this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2)

20   the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no

21   rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S.562, 564

22   (2000). Further, to establish a violation of the Equal Protection Clause, the prisoner must present

23   evidence of discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239-240 (1976).

24         The Due Process Clause protects prisoners from being deprived of liberty without due

25   process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of action

26   for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for

27   which the protection is sought. "States may under certain circumstances create liberty interests

28   which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. *Id*. at 563-71. Confrontation and cross examination are not generally required. *Id*. at 567. As long as the five minimum *Wolff* requirements are met, due process has been satisfied. *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

"When prison officials limit a prisoner's right to defend himself they must have a legitimate penological interest." *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992) (per curiam) (concluding that prisoners do not have a right to have an independent drug test performed at their own expense). The right to call witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." *Ponte v. Real*, 471 U.S. 491, 495 (1985).

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Superintendent, Mass. Corr. Inst., Walpole, v. Hill*, 472 U.S. 445, 455 (1985); *see also Toussaint v. McCarthy*, 926 F.2d 800, 802-03 (9th Cir. 1991). The relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached ….as [t]he Federal Constitution does not require evidence that

1  logically precludes any conclusion but the one reached by the disciplinary board." *Hill*, at 455-57.

2  "Suits against state officials in their official capacity ... should be treated as suits against

3  the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108,

4  1111 (9th Cir. 2010) (treating prisoner's suit against state officials in their official capacities as a

5  suit against the state of California). An official capacity suit "represent[s] only another way of

6  pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473

7  U.S. 159, 165 (1985) (citation omitted). Such a suit "is not a suit against the official personally,

8  for the real party in interest is the entity." *Id.* at 166 (emphasis in original).

9  "The Eleventh Amendment bars suits for money damages in federal court against a state,

10  its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public*

11  *Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Indeed, the Eleventh Amendment prohibits federal

12  courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought against

13  a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid

14  congressional override...." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999). "The

15  Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an

16  arm of the state,' its instrumentalities, or its agencies." *See Fireman's Fund Ins. Co. v. City of*

17  *Lodi, Cal.*, 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and citations omitted), cert.

18  denied, 538 U.S. 961 (2003). "The State of California has not waived its Eleventh Amendment

19  immunity with respect to claims brought under § 1983 in federal court...." *Dittman*, 191 F.3d at

20  1025–26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see also Brown v.*

21  *Cal. Dep't. of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of

22  Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity).

23  *Analysis*

24  The Court begins with Plaintiff's first assertion that "the Secretary of CDCR authorized

25  Plaintiff to be transferred to Corcoran State Prison where he was housed on a yard also housing

26  Level 4 security inmates" and where Corcoran is a "COCCI" or "cocci" designated facility. First,

27  although Plaintiff has not expressly indicated whether he is suing the CDCR Secretary in his or

28  her official and/or individual capacity, Plaintiff's first amended complaint indicates he seeks both

20

an award of money damages and injunctive relief against all defendants. Thus, to the extent

Plaintiff intended to sue the CDCR Secretary in his or her official capacity, he may not do so.

*Aholelei*, 488 F.3d at 1147; *Dittman*, 191 F.3d at 1025. Second, Plaintiff has not stated any

cognizable claim against the CDCR Secretary in his or her individual capacity. This portion of

Plaintiff's third cause of action is utterly lacking in causal connection or linkage. Plaintiff merely

identifies the "Secretary of CDCR" as having authorized Plaintiff's transfer. *Iqbal*, 556 U.S. at

678; *Rizzo*, 423 U.S. at 373-75. This is insufficient to state a due process violation, nor is it

sufficient to state a claim on a failure to protect theory under the Eighth Amendment.

Next, liberally construing the first amended complaint, Plaintiff has plausibly alleged

Eighth Amendment failure to protect claims against Defendants Gonzales and Pilkerton

concerning their refusals to wear a mask and follow CDCR directives, knowing the obvious risk

presented by COVID, and yet disregarding the serious harm to Plaintiff presented by that risk.

*Farmer*, 511 U.S. at 832-33.

Liberally construing the first amended complaint, Plaintiff has plausibly stated an equal

protection violation against Defendant Pilkerton. This is so because Plaintiff has asserted that he

and another inmate were issued a disciplinary report for failing to socially distance and that

Plaintiff was intentionally treated differently than the other inmate—Inmate Conley—where there

was no basis for the different in treatment and Conley was found not guilty following issuance of

the same disciplinary report, but Plaintiff was assessed loss of good time credits and dayroom

privileges for the same conduct. *Olech*, 528 U.S. at 564; *Washington*, 426 U.S. at 239-240.

And, liberally construing the first amended complaint, Plaintiff has plausibly alleged a due

process violation against Defendant Pilkerton. Plaintiff alleges one of the five minimum

requirements provided under *Wolff* was denied to Plaintiff—his right to call witnesses and present

documentary evidence in his defense. Plaintiff contends Pilkerton allowed only one of Plaintiff's

four proffered witnesses to testify and refused to allow Plaintiff to present evidence that social

distancing was not a chargeable offense pursuant to CDCR regulations. Further, it appears

Plaintiff is asserting Pilkerton also denied Plaintiff another protection afforded by *Wolff*— legal

assistance to the prisoner where the prisoner is illiterate or the issues presented are legally

complex—because Plaintiff references a reasonable accommodation requirement, purportedly in his prison file, that requires accommodation in the form of staff speaking slowly and using simple words. Plaintiff alleges he advised Pilkerton of his "effective communication disability," but that Pilkerton stated he did not see such an accommodation and made no effort to verify Plaintiff's assertion such an accommodation existed. Nevertheless, Plaintiff has not stated a plausible due process or equal protection claim against Defendant Gonzales. The issuance of a disciplinary report alone is insufficient to state a claim. And other than a refusal to wear a mask as noted above, that is the only other conduct attributable to Defendant Gonzales.

To summarize: (1) Plaintiff has failed to state any cognizable claim against the CDCR Secretary; (2) Plaintiff has plausibly alleged Eighth Amendment failure to protect claims against Defendants Gonzales and Pilkerton; (3) Plaintiff has plausibly alleged an equal protection claim against Defendant Pilkerton; and (4) Plaintiff has plausibly alleged a due process violation against Defendant Pilkerton. Plaintiff has failed to allege any other cognizable claim against any other Defendant in his third cause of action.

## Claim Four

Plaintiff's fourth cause of action is titled "Cruel and Unusual Punishment; Equal Protection; Due Process." (Doc. 20 at 19.) The Court construes the claim to assert Eighth Amendment excessive force and failure to intervene claims against Corcoran State Prison personnel, and Eighth Amendment conditions of confinement claims against Defendants Newsom and CDCR Secretary.

### *The Facts Alleged*

Plaintiff contends that on August 15, 2020, at the conclusion of the disciplinary hearing, Defendants John Doe #1 and John Doe #2, correctional officers at Corcoran State Prison, physically assaulted him in Defendant Pilkerton's presence. (Doc. 20 at 19.) He contends they grabbed him by the back of his shirt near each shoulder blade, and with "violent and excessive force, repeatedly slammed" their fists into his shoulders as they removed Plaintiff from the "Lieutenant's office and violently escorted" him out of the program office. (*Id*.) Plaintiff contends their assault was unprovoked. (*Id*.) Plaintiff asserts Pilkerton failed to intervene and prevent the

assault by the John Doe correctional officers. (*Id*.) Plaintiff contends he reported the assault and injury to medical personnel, and that on August 26, 2020, x-rays were ordered by medical staff. (*Id*.) Further, Plaintiff asserts that "based on the x-rays" medical staff ordered physical therapy for Plaintiff to recover movement of his left shoulder and arm. (*Id*.) Plaintiff contends he suffered injuries to his left shoulder and back and continues to suffer pain and restricted movement in his left arm and shoulder and pain in his upper back. (*Id*. at 19-20.) Plaintiff asserts he is a mobility impaired, elderly inmate and was subjected to an unreasonable risk of harm or death from the Doe Defendants' assault. (*Id*. at 20.) Plaintiff contends Pilkerton, as a correctional lieutenant, personally observed the assault but failed to perform her "fiduciary duty to act and to stop the assault." (*Id*.)

Plaintiff further alleges that "Defendants Gavin Newsom and Secretary of CDCR have continually failed to comply with court ordered obligations 'to insure compliance with the ADA' and that 'Defendants have repeatedly failed to comply with their accountability obligation.'" (Doc. 20 at 20.) Plaintiff asserts Defendants Newsom and the Secretary of CDCR have "'failed to implement an effective system for investigating and disciplining violations of the ARP and ADA,' and that a staff culture exists in which staff targeted disabled inmates" for abuse, including Plaintiff. (*Id*.) Further, Plaintiff asserts these Defendants have failed to take reasonable measures to control the spread of COVID by "deliberately" allowing staff in their employ to violate CDCR policy and the executive order, "causing the unnecessary outbreak of hundreds of infections within CIM, Corcoran, and other prisons" causing "dozens of inmate deaths at CIM that would not have occurred but for" their direct actions and/or omissions. (*Id.* at 20-21.) Finally, Plaintiff alleges Defendants Newsom and Secretary of CDCR "by their failure to act, created a custom, and maintained that custom of allowing CDCR employees to violate policy without fear of disciplinary action, and that said custom is directly attributable to the right of Plaintiff being violated by all other defendants in this complaint." (*Id*. at 21.) Plaintiff has suffered pain and discomfort and emotional and psychological harm as a result. (*Id.*)

//

//

1                                  ***The Applicable Legal Standards***

2       Where an applicable legal standard has already been provided herein, the standard or

3 standards will not be repeated.

4       "[T]he unnecessary and wanton infliction of pain on prisoners constitutes cruel and

5 unusual punishment" in violation of the Eighth Amendment. *Whitley*, 475 U.S. at 328 (internal

6 quotation marks & citation omitted). As courts have succinctly observed, "[p]ersons are sent to

7 prison as punishment, not *for* punishment." *Gordon v. Faber*, 800 F. Supp. 797, 800 (N.D. Iowa)

8 (quoting *Battle v. Anderson*, 564 F.2d 388, 395 (10th Cir. 1977)) (citation omitted). "Being

9 violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their

10 offenses against society." *Farmer*, 511 U.S. at 834 (internal quotation marks & citation omitted).

11       A correctional officer engages in excessive force in violation of the Cruel and Unusual

12 Punishments Clause if he (1) uses excessive and unnecessary force under all the circumstances,

13 and (2) "harms an inmate for the very purpose of causing harm," and not "as part of a good-faith

14 effort to maintain security." *Hoard v. Hartman*, 904 F.3d 780, 788 (9th Cir. 2018). In other

15 words, "whenever prison officials stand accused of using excessive physical force …, the core

16 judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore

17 discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7. In making

18 this determination, courts may consider "the need for application of force, the relationship

19 between that need and the amount of force used, the threat reasonably perceived by the

20 responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7.

21 Courts may also consider the extent of the injury suffered by the prisoner. *Id.* However, the

22 absence of serious injury is not determinative. *Id.*

23       Prison officials have a duty to take reasonable steps to protect inmates from physical

24 abuse. *Farmer*, 511 U.S. at 832-33; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). The

25 failure to intervene can support an excessive force claim where the bystander-officers had a

26 realistic opportunity to intervene but failed to do so. *Lolli v. County of Orange*, 351 F.3d 410, 418

27 (9th Cir. 2003); *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (stating failure to

28 intervene can violate prisoner's Eighth Amendment rights).

1    The deliberate indifference standard for an Eighth Amendment conditions of confinement

2    claim involves both an objective and a subjective prong. First, the alleged deprivation must be, in

3    objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834. Second, subjectively, the prison

4    official must "know of and disregard an excessive risk to inmate health or safety." *Id*. at 837;

5    *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).

6    Objectively, extreme deprivations are required to make out a conditions of confinement

7    claim and only those deprivations denying the minimal civilized measure of life's necessities are

8    sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson*, 503 U.S. at 9.

9    Some conditions of confinement may establish an Eighth Amendment violation "in combination"

10   when each would not do so alone, but only when they have a mutually enforcing effect that

11   produces the deprivation of a single, identifiable human need such as food, warmth, or exercise --

12   for example, a low cell temperature at night combined with a failure to issue blankets. *Wilson,*

13   501 U.S. at 304-05 (comparing *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) [outdoor

14   exercise required when prisoners otherwise confined in small cells almost 24 hours per day] with

15   *Clay v. Miller*, 626 F.2d 345, 347 (4th Cir. 1980) [outdoor exercise not required when prisoners

16   otherwise had access to dayroom 18 hours per day]). To say that some prison conditions may

17   interact in this fashion is far from saying that all prison conditions are a seamless web for Eighth

18   Amendment purposes. *Id*. Amorphous "overall conditions" cannot rise to the level of cruel and

19   unusual punishment when no specific deprivation of a single human need exists. *Id*. Further,

20   temporarily unconstitutional conditions of confinement do not necessarily rise to the level of

21   constitutional violations. *See Anderson*, 45 F.3d 1310, citing to *Hoptowit v. Ray*, 682 F.2d 1237,

22   1258 (9th Cir. 1982) (abrogated on other grounds by *Sandin*, 515 U.S. 472 (in evaluating

23   challenges to conditions of confinement, length of time the prisoner must go without basic human

24   needs may be considered)).

25   Subjectively, if an objective deprivation is shown, a plaintiff must show that prison

26   officials acted with a sufficiently culpable state of mind, that of "deliberate indifference."  *Wilson*,

27   501 U.S. at 303; *Labatad*, 714 F.3d at 1160. Again, "[d]eliberate indifference is a high legal

28   standard." *Toguchi*, 391 F.3d at 1060. "Under this standard, the prison official must not only 'be

1   aware of the facts from which the inference could be drawn that a substantial risk of serious harm

2   exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at

3   837). "'If a prison official should have been aware of the risk, but was not, then the official has

4   not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson*, 290

5   F.3d at 1188). To prove knowledge of the risk, however, the prisoner may rely on circumstantial

6   evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge.

7   *Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).

8   *Analysis*

9       Liberally construing the first amended complaint, Plaintiff has plausibly alleged Eighth

10  Amendment excessive force claims against Defendants John Doe #1 and John Doe #2. Plaintiff

11  asserts these correctional officers grabbed him by the back of his shirt near each shoulder blade,

12  and repeatedly and violently slammed their fists into his shoulders, causing injuries to Plaintiff's

13  left shoulder and back, restricted movement in his left arm and shoulder and pain in his upper

14  back requiring medical treatment and physical therapy. *Farmer*, 511 U.S. at 834.

15      Further, liberally construing the first amended complaint, Plaintiff has plausibly alleged an

16  Eighth Amendment failure to intervene claim against Defendant Pilkerton. Plaintiff alleges that in

17  Pilkerton's presence, two correctional officers used excessive force against Plaintiff while

18  removing him from the disciplinary hearing that Pilkerton conducted on August 15, 2020, and

19  that the actions of the unknown correctional officers were unprovoked, yet Pilkerton failed to

20  intervene. *Farmer*, 511 U.S. at 832-33; *Robins*, 60 F.3d at 1442.

21      However, Plaintiff has failed to allege cognizable claims against Defendant Newsom and

22  the CDCR Secretary. As noted above, although Plaintiff has not expressly indicated whether he is

23  suing Defendants Newsom and the CDCR Secretary in their official and/or individual capacities,

24  Plaintiff's first amended complaint indicates he seeks an award of money damages and injunctive

25  relief against both. Thus, to the extent Plaintiff intended to sue these Defendants in their official

26  capacities, he may not do so. *Aholelei*, 488 F.3d at 1147; *Dittman*, 191 F.3d at 1025. Second,

27  Plaintiff has not stated cognizable claims against these Defendants in their individual capacities.

28  Plaintiff repeatedly concludes that the dangerous conditions he alleges are attributable to these

Defendants but does so without factual support for his legal conclusions. Legal conclusions are insufficient. *Iqbal*, 556 U.S. at 678. Moreover, to the extent Plaintiff sought to assert a due process claim against Defendants Newsom and the CDCR Secretary, such a claim is not cognizable. In *Six v. Newsom*, 462 F. Supp. 3d 1060, 1073 (C.D. Cal. May 22, 2020), the court held that governmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing; general notice as provided by law is sufficient.

In sum, Plaintiff has plausibly stated cognizable excessive force claims against Defendants John Doe #1 and John Doe #2, and a failure to intervene claim against Defendant Pilkerton. However, Plaintiff has failed to state any cognizable claim against any other named Defendant in his fourth cause of action.

## V.   CONCLUSION AND RECOMMENDATIONS

For the reasons set forth above, the Court **RECOMMENDS** that:

1. Plaintiff's first amended complaint PROCEED *only* on the following cognizable claims:

    a. Eighth Amendment deliberate indifference to serious medical needs claims against the Defendants CIM Warden, Delgadillo and Gilman (claim one);

    b. Eighth Amendment failure to protect claims against Defendants CIM warden, Delgadillo, Farooq, Gilman, Lemus and Torres (claim two);

    c. Eighth Amendment failure to protect claims against Defendants Gonzales and Pilkerton (claim three);

    d. An equal protection violation against Defendant Pilkerton (claim three);

    e. A due process violation against Defendant Pilkerton (claim three);

    f. Eighth Amendment excessive force claims against Defendants John Doe #1 and John Doe #2 (claim four); and

    g. An Eighth Amendment failure to intervene claim against Defendant

Pilkerton (claim four);

2. The remaining claims in Plaintiff's first amended complaint be DISMISSED; and

3. That named Defendants Newsom, CDCR Secretary and Warden, Corcoran State Prison be DISMISSED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these Findings and Recommendations, a party may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 18, 2023**

UNITED STATES MAGISTRATE JUDGE

28