1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  PAUL ROBERTS,                          Case No. 1:21-cv-00506-KES-CDB (PC)

12              Plaintiff,                  **FINDINGS AND RECOMMENDATIONS
                                            TO GRANT IN PART AND DENY IN
13      v.                                  PART DEFENDANTS' MOTION TO
                                            PARTIALLY DISMISS PLAINTIFF'S**
14  GAVIN NEWSOM, et al.,                   **FIRST AMENDED COMPLAINT**

15              Defendants.                 (Doc. 34)

16                                          **14-DAY OBJECTION PERIOD**

17

18

19          Plaintiff Paul Roberts is a state prisoner proceeding pro se in this civil rights action

20  brought pursuant to 42 U.S.C. § 1983.

21      **I.      INTRODUCTION**

22          Following screening, this action proceeds on the following claims as asserted in Plaintiff's

23  first amended complaint: (a) Eighth Amendment deliberate indifference to serious medical needs

24  claims against Defendants CIM Warden, Delgadillo, and Gilman (claim one); (b) Eighth

25  Amendment failure to protect claims against Defendants CIM Warden, Delgadillo, Farooq,

26  Gilman, Lemus, and Torres (claim two); (c) Eighth Amendment failure to protect claims against

27  Defendants Gonzales and Pilkerton (claim three); (d) an equal protection violation against

28  Defendant Pilkerton (claim three); (e) a due process violation against Defendant Pilkerton (claim

1    three); (f) Eighth Amendment excessive force claims against Defendants John Doe #1 and John

2    Doe #2 (claim four); and (g) Eighth Amendment failure to intervene claim against Defendant

3    Pilkerton (claim four). (*See* Doc. 25.)

4        Following service of process, on November 22, 2023, Defendants Houston,[1] Gilman,

5    Delgadillo, Lemus, Farooq, Torres, Pilkerton, and Gonzales filed a motion to partially dismiss

6    Plaintiff's first amended complaint. (Doc. 34.) Plaintiff opposed (Doc. 36) and Defendants replied

7    (Doc. 37).

8    **II.      APPLICABLE LEGAL STANDARDS**

9    ***Federal Rule of Civil Procedure 12(b)(1)***

10       Federal Rule of Civil Procedure 12(b)(1) allows a defendant to raise the defense, by

11   motion, that the court lacks jurisdiction over the subject matter of an entire action or of specific

12   claims alleged in the action. "Because standing and mootness both pertain to a federal court's

13   subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under

14   Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6)." *White v. Lee*, 227 F.3d 1214, 1242

15   (9th Cir. 2000).

16       There are two types of motions to dismiss for lack of subject matter jurisdiction: a facial

17   attack, and a factual attack. *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733

18   (9th Cir. 1979). "In a facial attack, the challenger asserts that the allegations contained in a

19   complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual

20   attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise

21   invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

22       When a party makes a facial attack on a complaint, the attack is unaccompanied by

23   supporting evidence, and it challenges jurisdiction based solely on the pleadings. *Id*. If the motion

24   to dismiss constitutes a facial attack, the Court must consider the factual allegations of the

25   complaint to be true and determine whether they establish subject matter jurisdiction. *Savage v.

26   Glendale High Union Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003). In the case of a

27   facial attack, the motion to dismiss is granted only if the nonmoving party fails to allege an

28

---

[1] Defendant Houston was served as the warden at the California Institution for Men. (*See* Doc. 34, n.1.)

1   element necessary for standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

2       In the case of a factual attack, district courts "may review evidence beyond the complaint

3   without converting the motion to dismiss into a motion for summary judgment." *Safe Air for*

4   *Everyone*, 373 F.3d at 1039. In that instance, "[n]o presumptive truthfulness attaches to plaintiff's

5   allegations." *Thornhill*, 594 F.2d at 733 (internal citation omitted). The burden to demonstrate

6   subject matter jurisdiction is on the party asserting the claim. *See Harris v. KM Indus., Inc*., 980

7   F.3d 694, 699 (9th Cir. 2020). And where the moving party makes a factual challenge to the

8   court's subject matter jurisdiction by offering affidavits or other evidence in support of the

9   motion, the opposing or non-moving party must present similar evidence "necessary to satisfy the

10  burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v.*

11  *City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). If the nonmoving party fails to meet its burden

12  and the court determines that it lacks subject matter jurisdiction, the court must dismiss the action.

13  Fed. R. Civ. P. 12(h)(3).

14              ***Federal Rule of Civil Procedure 12(b)(6)***

15      A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro*

16  *v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In resolving a 12(b)(6) motion, the Court's review is

17  generally limited to the "allegations contained in the pleadings, exhibits attached to the complaint,

18  and matters properly subject to judicial notice." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519

19  F.3d 1025, 1030-31 (9th Cir. 2008) (internal quotation marks & citations omitted). Dismissal is

20  proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged

21  under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

22  1988) (citation omitted).

23      "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

24  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

25  U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court

26  "accept[s] as true all well-pleaded allegations of material fact, and construe[s] them in the light

27  most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998

28  (9th Cir. 2010) (citation omitted). In addition, the Court construes pleadings of pro se prisoners

1   liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir.

2   2010) (citation omitted). However, "the liberal pleading standard … applies only to a plaintiff's

3   factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989).

**III.    DISCUSSION**

The Court will address Defendants' arguments in their order of presentation.

***A.  Compensatory Damages and Injunctive Relief Based on COVID-19***

<u>The Parties' Positions</u>

Defendants contend Plaintiff's compensatory damages and injunctive relief claims based

on COVID-19 should be dismissed for a lack of subject matter jurisdiction. (Doc. 34 at 16.) More

specifically, Defendants assert Plaintiff's first amended complaint fails to allege any injury

caused by Plaintiff's exposure to COVID-19. (*Id*. at 17.) They argue Plaintiff does not allege he

contracted the virus or suffered from any symptom caused by COVID-19. (*Id*.) On that basis

alone, Defendants contend Plaintiff's compensatory damages claim cannot proceed against any

defendant based on his or her deliberate indifference to Plaintiff's risk of COVID-19 infection.

(*Id*.)

Plaintiff contends the Court has subject matter jurisdiction over these claims. (Doc. 36 at

4.) He maintains the Governor's Executive Order N-33-20 "on its face [substantiates] a

[substantial] higher risk and imminent future danger of contracting the highly deadly COVID 19

through excess exposure." (*Id*. at 4.) Quoting from the Executive Order, Plaintiff asserts there can

be no dispute that he and Defendants were subject to the Governor's order and that Defendants

cannot argue "ignorance of the Governor's Executive Order." (*Id*. at 4-5.) He maintains a state of

emergency was declared due to those risks and that he alleged a likelihood of future harm by

asserting "Defendant Gilman was 'intending to inflict …Pain' by exposing Plaintiff to COVID

19." (*Id*. at 5.)  Plaintiff was afraid of contracting or spreading the virus. (*Id*.) Plaintiff states he

alleged Defendants Delgadillo and Gilman intended to inflict pain and that he filed a grievance

alleging numerous inmates were showing signs of COVID-19 as a result. (*Id*. at 6.) He argues he

alleged severe headaches, deprivation of sleep, and a lack of oxygen to his brain in his first

amended complaint. (*Id*.) He asserts that Defendants Houston, Gilman, Delgadillo, and Lemus

1  intended to subject him to pain by subjecting him to an unreasonable risk of serious harm

2  "through an unnecessary and unreasonable excessive exposure to COVID 19." (*Id*.) Plaintiff

3  maintains Defendants Farooq and Torres also intended to inflict pain, and that Defendant Houston

4  was personally involved and "sustained a custom of allowing her staff to violate policy without

5  fear of disciplinary action," and that policy was "directly contributable" to his pain. (*Id*.)

6        Plaintiff contends the case law cited by Defendants involve very different circumstances

7  than those present in this action. (*Id*. at 6-7.) Plaintiff states "physical injury was held

8  unconstitutional as applied to bar prisoner's claim of mental and emotional damages, in absence

9  of injury" in a retaliation case filed in a Michigan district court and cites other out of circuit

10  authority. (*Id*. at 7-8.) Plaintiff argues "the World Pandemic was actively causing severe

11  respiratory difficulty[,] major organ damages and death" and that the Office of the Inspector

12  General issued a February 2021 report specifically finding CIM failed to properly follow "the

13  CCHCS COVID 19 contact training policy …." (*Id*. at 8.) He maintains that "coupled with

14  Defendants flagrant violation" of the Executive Order and San Bernardino's "county wide order

15  to wear facial coverings and CDCR's policy and directives[,] there unquestionably existed an

16  immediate danger to Plaintiff at all times mentioned in the FAC." (*Id*. at 9.) Plaintiff contends

17  case law "unquestionably supports" the Court's subject matter jurisdiction for compensatory

18  damages and injunctive relief "for the court to reverse the guilty finding of the disciplinary

19  offense that is unlawful." (*Id*.) Plaintiff concludes by stating the Court has "and should exercise

20  its discretion and delay ruling on" Defendants' motion. (*Id*.)

21        Defendants contend in reply to Plaintiff's opposition that none of his assertions establish

22  that the Court has subject matter jurisdiction over Plaintiff's compensatory damages or injunctive

23  relief claims based on an alleged disregard of Plaintiff's risk of COVID-19 infection. (Doc. 37 at

24  2.) They maintain Plaintiff's assertions do not evince a past injury related to COVID-19, and that

25  a previous risk of infection does not establish an injury, that headaches, sleep deprivation and

26  oxygen deprivation are insufficient to establish a COVID-19 injury because the first amended

27  complaint "specifies that the deprivation of Plaintiff's CPAP device (not COVID-19) caused

28  those problems." (*Id*. at 3.) Defendants contend the purported intent to cause Plaintiff pain by

1    Defendants is irrelevant because, even if Defendants intended to cause pain, the first amended

2    complaint does not allege an injury based on a defendant's alleged disregard of Plaintiff's

3    COVID-19 infection risk. (*Id*.) Next, Defendants maintain Plaintiff's opposition "categorically

4    fails to argue" that this Court has subject matter jurisdiction over Plaintiff's COVID-19 related

5    injunctive relief claims because the first amended complaint alleges only past conduct. (*Id*. at 3-

6    4.) Because the operative complaint does not allege any present or likely future conduct or

7    identify any present or likely COVID-19 harm from past conduct, Defendants maintain the Court

8    lacks subject matter jurisdiction over the injunctive relief claims. (*Id*. at 4.)

9                                          Analysis

10    Here, Defendants present a facial challenge to this Court's subject matter jurisdiction as it

11    relates to Plaintiff's requests for compensatory damages and injunctive relief. Thus, the Court

12    considers the allegations in Plaintiff's first amended complaint to be true for purposes of its

13    determination. *Savage*, 343 F.3d at 1039 n.1.

14    Plaintiff's first amended complaint asserts he is 62 years old, mobility impaired, and

15    suffers from COPD with emphysema, congestive heart failure, hypertension, obesity, atrial

16    fibrillation, and is at high risk for serious illness or death from a COVID-19 infection. (Doc. 20 at

17    8.) Plaintiff contends that because he was unable to use his CPAP machine in a makeshift dorm

18    lacking electrical outlets, he suffered severe headaches from a lack of oxygen to his brain, sleep

19    deprivation, and extreme anxiety. (*Id*. at 8-9; *see also id*. at 18, 21.) Plaintiff's first amended

20    complaint also asserts that when the CPAP electrical cord was confiscated on April 14, 2020,

21    rendering his CPAP device inoperable, Plaintiff suffered severe headaches from a lack of oxygen

22    to his brain, sleep deprivation, and extreme anxiety caused by not having access to and use of his

23    CPAP device. (*Id*. at 12-13.) The cord was returned on April 30, 2020. (*Id*. at 13.)

24    Article III limits federal court jurisdiction to "cases and controversies." *Valley Forge*

25    *Christian College v. Americans United for Separation of Church & State, Inc*., 454 U.S. 464, 471,

26    102 (1982). A plaintiff cannot establish a case or controversy if a plaintiff cannot establish

27    standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101, 118 (1998). To have Article III

28    standing, a plaintiff must establish: "(1) [he] has suffered an 'injury in fact' that is (a) concrete

and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Other district courts have found the threat of future harm sufficient to establish standing where plaintiff seeks an injunction. *See Martinez Franco v. Jennings*, 456 F. Supp. 3d 1193, 1197-98 (N.D. Cal. 2020) (finding plaintiff had standing to seek injunctive relief based risk of contracting COVID-19 in an immigration detention center, citing *Helling v. McKinney*, 509 U.S. 25 (1993) [inmate stated Eighth Amendment claim based upon possible future harm to health, as well as present harm, arising out of exposure to secondhand smoke]); *see also Williams v. Pollard*, No. 21cv0055-CAB (BGS), 2022 WL 184552, at *6 (S.D. Cal. Jan. 19, 2022) (finding plaintiff's "ongoing emotional and physical effects from that failure including panic anxiety attacks, migraine headaches, muscle cramps, sleep deprivation, and severe indigestion with stomach pain and discomfort" not speculative; can be redressed by favorable decision, satisfying "Article III's injury in fact standing requirement").

Here, the Court finds Plaintiff alleges sufficient facts to establish a case or controversy. Plaintiff alleges that he suffered severe headaches from a lack of oxygen to his brain and sleep deprivation due to an inability to use his CPAP machine. Admittedly, Plaintiff's operative complaint does not allege Plaintiff contracted COVID-19, nor does it expressly allege that he suffered from COVID-19 symptoms. But Plaintiff's inability to use his CPAP device is an actual injury and is fairly traceable to the Defendants' alleged conduct and can be redressed by a favorable decision. *Friends of the Earth, Inc.*, 528 U.S. at 180-81.

In *Greer v. KCSO Administration,* the assigned magistrate judge recommended dismissal for a lack of subject matter jurisdiction where the plaintiff failed "to show that he suffered an injury in fact. He contends that the conditions of confinement at the Kern County jail where he was incarcerated placed him 'at risk of infection of COVID-19.' … This allegation fails to show that Plaintiff suffered any actual, concrete harm. Plaintiff does not allege that he ever contracted

1   COVID-19 or that he suffered any symptoms associated with COVID-19." *Greer*, No. 1:21-cv-

2   00108-JLT (PC), 2021 WL 3857677, at *2 (E.D. Cal. Aug. 30, 2021), recommendation adopted,

3   2021 WL 4502818 (Oct. 1, 2021). The undersigned finds *Greer* distinguishable. There, the

4   plaintiff alleged only emotional harm. *Id*., at *1-2. Here, affording Plaintiff the benefit of every

5   doubt, the Court is inclined to allow Plaintiff's compensatory damages claim to proceed and finds

6   Plaintiff has met the injury-in-fact requirement and has standing to assert his claim. *Friends of the*

7   *Earth, Inc.* 528 U.S. at 180-81; *Hebbe*, 627 F.3d at 342 (affording plaintiff the benefit of any

8   doubt).

9       Regarding future harm, the Supreme Court has stated: "We have great difficulty agreeing

10   that prison authorities may not be deliberately indifferent to an inmate's current health problems

11   but may ignore a condition of confinement that is sure or very likely to cause serious illness or

12   needless suffering the next week or month or year." *Helling*, 509 U.S. at 33. In its earlier

13   jurisprudence, the high court held inmates facing possible contraction of hepatitis and venereal

14   disease could properly seek a remedy "even though it was not alleged that the likely harm would

15   occur immediately and even though the possible infection might not affect all of those exposed."

16   *Id*. (citing *Hutto v. Finney*, 437 U.S. 678, 682 (1978)). "That the Eighth Amendment protects

17   against future harm to inmates is not a novel proposition. The Amendment, as we have said,

18   requires that inmates be furnished with the basic human needs, one of which is 'reasonable

19   safety.'" *Id*. It can be reasonably inferred from Plaintiff's first amended complaint that he alleges

20   future harm from exposure to COVID.

21       Next, Defendants challenge the Court's jurisdiction over Plaintiff's injunctive relief

22   claims. Plaintiff's first amended complaint seeks the following injunctive relief: to identify

23   Plaintiff "as particularly vulnerable to contracting COVID and other communicable diseases

24   because of his environment" and to "permanently 'single cell status' Plaintiff." (Doc. 20 at 7.) As

25   Defendants point out, the relief Plaintiff seeks is now moot. Plaintiff states he has been already

26   identified as a high risk inmate as concerns COVID-19 (Doc. 20 at 8[2]) and was assigned single-

27   _____

28   [2] Specifically, the first amended complaint states: "Plaintiff is an Armstrong Class Member and is identified as high risk for serious illness and death from COVID infection because of his medical condition and advanced age."

1   cell status on April 30, 2020 (*id.* at 13), in the absence of any indication that either the

2   vulnerability identification or the single-cell classification would be overturned or reversed.

3         A moot claim "is one where the [applicable] issues are no longer live or the part[y] lack[s]

4   a legally cognizable interest in the outcome." *Sample v. Johnson*, 771 F.2d 1335, 1338 (9th Cir.

5   1985) (citation omitted). "Federal courts lack jurisdiction to decide moot [claims] because their

6   constitutional authority extends only to actual cases or controversies." *Id.* (citing *Iron Arrow*

7   *Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)). *See Brach v. Newsom*, 38 F.4th 6, 11-15 (9th

8   Cir. 2022) (finding moot plaintiff's request for injunction and declaratory judgment regarding

9   California school reopening plan during COVID-19 pandemic because state had lifted all

10  restrictions on school reopening); *Walter v. Delano*, No. 21-cv-05666-HSG, 2024 WL 11835464,

11  at *1 (N.D. Cal. June 6, 2023) ("several cases have concluded that claims based on COVID-19

12  safety policies are moot and federal courts lack subject matter jurisdiction following the lifting of

13  such restrictions"); *McLaughlin v. Tanner*, No. 13-6563-DEK, 2014 WL 6485644, at *1 (E.D. La.

14  Nov. 18, 2014) (plaintiff's claims challenging policy requiring that inmates in disciplinary

15  confinement on extended lockdown remain in restraints while exercising outside of their cell

16  rendered moot by plaintiff's transfer to "a working cell" and finding plaintiff's "claims for

17  declaratory and injunctive relief are now moot, the Court no longer has subject matter jurisdiction

18  to consider those claims"). In sum, Plaintiff has been identified as a high risk inmate as concerns

19  COVID-19 and communicable diseases and attained single cell status on April 30, 2020. His

20  claims for injunctive relief are now moot. *Sample*, 771 F.2d at 1338.

21        For the reasons given above, the Court will recommend the motion to dismiss for a lack of

22  subject matter jurisdiction concerning Plaintiff's compensatory damages claims be denied.

23  Further, the Court will recommend the motion to dismiss for a lack of subject matter jurisdiction

24  concerning Plaintiff's injunctive relief claims be granted.

25                    ***B. Injunctive Relief Against CIM Defendants***

26        Defendants Houston, Gilman, Delgadillo, Lemus, Farooq, and Torres—the CIM

27  Defendants—also contend they are entitled to dismissal of any claim for injunctive relief asserted

28  against them because this Court lacks subject matter jurisdiction. (Doc. 34 at 19.) Specifically,

1   because Plaintiff is no longer housed at CIM and there are no facts to suggest he is likely to be

2   transferred back to CIM, the injunctive relief Plaintiff seeks is now moot. (*Id*.)

3         "To qualify as a case fit for federal-court adjudication, an actual controversy must be

4   extant at all stages of review, not merely at the time the complaint is filed." *Davis v. Fed. Election*

5   *Comm'n*, 554 U.S. 724, 732-33 (2008) (internal quotation marks omitted). A case that becomes

6   moot at any point during the proceedings is "no longer a 'Case' or 'Controversy' for purposes of

7   Article III," and is outside the federal courts' jurisdiction. *United States v. Sanchez-Gomez*, 584

8   U.S. 381, 385-86 (2018) (quoting *Already, LLC v. Nike, Inc*., 568 U.S. 85, 91 (2013)). For the

9   controversies capable of repetition yet evading review exception to the mootness doctrine to

10  apply, a plaintiff must show that (1) the challenged action is in its duration too short to be fully

11  litigated prior to cessation or expiration and (2) there is a reasonable expectation that the same

12  complaining party will be subject to the same action again.  *Turner v. Rogers*, 564 U.S. 431, 439-

13  40 (2011). "[W]hen a prisoner is moved from a prison, his action will usually become moot as to

14  conditions at that particular facility." *Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001).

15        Here, Plaintiff's first amended complaint identified Defendants Torres, Gilman,

16  Delgadillo, Lemus, Warden Houston, and Farooq as employed at CIM. (*See* Doc. 20 at 4-5.)

17  However, Plaintiff is no longer incarcerated at CIM. Plaintiff is presently housed at the California

18  Health Care Facility, having transferred there from California State Prison-Corcoran in late 2022.

19  (*See* Doc. 23.) Plaintiff has not demonstrated a reasonable expectation that he will be returned to

20  CIM and subject to the same action again. Thus, Plaintiff's injunctive relief claims against the

21  CIM Defendants are moot. *Turner*, 564 U.S. at 439-40; *Nelson*, 271 F.3d at 897; *see also Stine v.*

22  *Von Blankensee*, No. 22-16142, 2024 WL 1406428, at *1 (9th Cir. Apr. 2, 2024 [Memo])

23  ("Stine's deliberate indifference claim seeking injunctive and declaratory relief has become moot

24  because Stine was transferred to another prison"); *Barrett v. Messer*, No. 1:20-cv-01313-NODJ-

25  CDB (PC), 2023 WL 9050992, at *9 (E.D. Cal. Dec. 29, 2023) (finding claims against defendants

26  "should be dismissed because the injunctive relief Plaintiff seeks is moot in light of his transfer

27  out of CSP"); *Greer*, 2021 WL 3857677, at *1 (finding plaintiff's claim for injunctive relief

28  against county jail moot where he is incarcerated in state prison and there is no reasonable

1  expectation he will return to the county jail).

2      The Court will recommend Plaintiff's injunctive relief claims against the CIM Defendants

3  be granted.

4  ### *C. Eighth Amendment Claims Based on COVID-19 Infection Risk*

5      Next, Defendants argue they are entitled to dismissal of all Plaintiff's COVID-19 claims

6  pursuant to Rule 12(b)(6) as they fail to state a claim upon which relief can be granted. (Doc. 34

7  at 20.)

8      Plaintiff argues he has stated claims upon which relief can be granted. (Doc. 36 at 9-12.)[3]

9  He contends he "suffered severe headaches from lack of oxygen …, sleep deprivation, and

10  extreme anxiety" causing "infliction of pain." (Doc. 20 at 9). Plaintiff maintains the inability to

11  use his CPAP device was contrary to CDCR healthcare directives and that inability, and the

12  actions of Defendants Houston, Farooq, Torres, and Lemus in particular, were the cause of his

13  injuries. (*Id.*) Plaintiff cites to authority concerning the imminent danger exception to the Prison

14  Litigation Reform Act (PLRA) to support his position. (*Id.* at 12.)

15      Briefly stated, Defendants reply that Plaintiff's arguments in opposition are not relevant,

16  and that Plaintiff fails to address the relevant authority in support of their position. (Doc. 37 at 7-

17  10.)

18      As noted above, this action proceeds, in relevant part, on Plaintiff's COVID-19 related

19  Eighth Amendment deliberate indifference to serious medical needs claims against Defendants

20  Houston, Delgadillo, and Gilman as asserted in claim one, failure to protect claims against

21  Defendants Houston, Delgadillo, Farooq, Gilman, Lemus, and Torres as asserted in claim two,[4]

22  and failure to protect claims against Defendants Gonzales and Pilkerton as asserted in claim three.

23

24

25  [3] To the extent Plaintiff's opposition includes argument concerning his claims against Doe defendants or claims unrelated to the Eighth Amendment, they are not recounted here. The challenge asserted by Defendants Houston, Gilman, Delgadillo, Lemus, Farooq, Torres, Pilkerton and Gonzales is specific to Plaintiff's Eighth Amendment claims against them. The Doe defendants have not appeared in this action.

26

27  [4] Plaintiff's fourth cause of action involves an Eighth Amendment excessive force claim against Doe defendants—the Doe defendants have not been identified, nor has any appearance been entered on those individuals' behalf—and a failure to intervene claim against Defendant Pilkerton based upon the alleged use of excessive force.

28

1                              1.   <u>Failure to State a Claim: Injury Related to COVID-19</u>

2              First, Defendants assert Plaintiff's first amended complaint fails to allege an injury related

3    to COVID-19. (Doc. 34 at 20-21.) Defendants maintain Plaintiff cannot rely on *Helling v.*

4    *McKinney*, 509 U.S. 25, 33 (1993) to support his claim because he has alleged no past harm

5    caused by COVID-19, nor a current risk of harm or any fact suggesting a substantial risk of

6    COVID-19 is likely to recur. (*Id*. at 21.) Without such facts, Defendants argue "*Helling* does not,

7    without more, allow Plaintiff to state a claim for relief based on Defendants' disregard of his

8    COVID-19 infection risk." (*Id*.)

9              The Court finds Plaintiff has sufficiently alleged some injury related to COVID-19. In

10   addition to the specific allegations related to the CPAP device, Plaintiff's first amended complaint

11   alleges he "suffered pain, discomfort, suffering, and emotional and psychological harm to his

12   mental health." (*See* Doc. 20 at 11, 15, 19.) Liberally construing the first amended complaint and

13   affording Plaintiff the benefit of every doubt, his allegations of "pain, discomfort, suffering,"

14   apart from the asserted emotional harm (i.e. "*and* emotional and psychological harm…") in that

15   context survive Defendants' challenge concerning past and current harm. *Hebbe*, 627 F.3d at 342;

16   *Neitzke*, 490 U.S. at 330 n.9.

17             Prisoner claims for future harm are cognizable under the Eighth Amendment. *See Helling*,

18   509 U.S. at 33 ("That the Eighth Amendment protects against future harm to inmates is not a

19   novel proposition"). The Supreme Court has also stated, however, that "threatened injury must be

20   certainly impending to constitute injury in fact, and that [a]llegations of possible future injury are

21   not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Here, reading the first

22   amended complaint liberally and affording Plaintiff the benefit of every doubt, the Court finds

23   Plaintiff's assertions sufficient concerning future harm. Plaintiff has asserted he is particularly

24   vulnerable to the virus given his age and physical ailments: he is 62 years old, mobility impaired,

25   has COPD with emphysema, congestive heart failure, hypertension, obesity, and atrial fibrillation.

26   (Doc. 20 at 8.) He asserts his risk of contracting the virus is high given his age and physical

27   ailments if he was housed in proximity or working with infected inmates or in close contact with

28   infected staff persons. While it can be argued the risk of contracting COVID is not "certainly

1   impending," there remains a substantial risk that the harm will occur where the COVID virus

2   remains a health concern. *Munns v. Kerry*, 782 F.3d 402, 409 (9th Cir. 2015) ("Rather than

3   requiring literal certainty, the Court has sometimes framed the injury requirement as a 'substantial

4   risk' that the harm will occur" (citing *Clapper*, 568 U.S. at 414 n.5). The Court will recommend

5   the motion to dismiss Plaintiff's failure to protect claims against Defendants Houston, Delgadillo,

6   Gilman, and Lemus[5] be denied.

7           Nevertheless, concerning Plaintiff's specific allegations that Defendants failed to protect

8   him by failing to wear masks or by failing to feed inmates in their cells (*see* Doc. 20 at 12-14), his

9   claims are not actionable because he does not allege that he contracted COVID. Thus, Plaintiff

10  fails to allege facts demonstrating that Defendants' failure to wear masks or to provide in cell

11  meals was the cause of his claimed injury. *See Jackson v. Surber*, No. 2:22-cv-01832-SB, 2023

12  WL 8257863, at *5 (D. Or. Nov. 29, 2023) (plaintiff failed to state Eighth Amendment claim

13  where he did not contract COVID-19 virus); *cf. Bennett v. Burton*, No. 2:21-cv-1340 WBS KJN

14  P, 2024 WL 1007311, at *7 (E.D. Cal. Mar. 8, 2024) ("plaintiff has sufficiently alleged that

15  defendant knew of the risks of COVID-19 and had authority to mitigate the risks, yet did nothing

16  to mitigate those risks, despite their ability to do so, and their failure to do so caused him to

17  contract COVID-19"). Based on masking and cell feeding, Court will recommend the motion to

18  dismiss Plaintiff's failure to protect claims against Defendants Houston, Delgadillo, Gilman, and

19  Lemus be granted.

20          In summary, the undersigned finds Plaintiff's Eighth Amendment deliberate indifference

21  to serious medical needs claims should proceed against Defendants Houston, Delgadillo, and

22  Gilman. However, Plaintiff's Eighth Amendment failure to protect claims concerning masking

23  and feeding against Defendants Houston, Delgadillo, Gilman, and Lemus,[6] should be dismissed

24  without leave to amend. *Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district

25  court may deny leave to amend when amendment would be futile"). As a result, the Court will

---

26  [5] The failure to protect claim against Defendant Lemus for confiscating the electrical cord to Plaintiff's CPAP device

27  is not affected by this finding.

28  [6] The failure to protect claims against Defendants Gonzales and Pilkerton are addressed separately below.

1    recommend the motion be denied in part and granted in part on this basis.

2                    2.   Failure to State a Claim: Compensatory Damages

3         Second, Defendants contend Plaintiff fails to state a claim for compensatory damages

4    because his first amended complaint does not allege that he contracted COVID-19 or suffered

5    symptoms of that virus. (Doc. 34 at 21-22.) Defendants also maintain Plaintiff cannot recover

6    damages based upon a mental or emotional injury. (*Id*. at 22.)

7         Defendants primarily rely upon a 2011 decision from this district wherein the Court found

8    an inmate failed to state an Eighth Amendment conditions of confinement claim for damages

9    because the inmate did not describe the actual harm he suffered. (Doc. 34 at 22.) In that case, the

10   wheelchair bound inmate alleged certain conditions in his assigned dorm, including electrical

11   outlets causing shocks and cords running across the floors, as well as faulty ceiling and floor tiles,

12   posed hazards. *Van Nort v. Dickinson*, No. 2:09-cv-1566-KJN (TEMP) P, 2011 WL 2923979, at

13   *1 (E.D. Cal. July 15, 2011). The inmate asserted the cords "could be 'stepped on, tripped over,

14   [or] run across with wheelchairs'" and that the "'ceiling tiles are falling off and have hit Plaintiff

15   on many occasions,' and that floor tiles have broken, 'on one occasion caus[ing] the Plaintiff to

16   be thrown out of his wheelchair.'" *Id*. The Court found "the second amended complaint does not

17   aver any specific injury at all" and that while Plaintiff "alleges that he was shocked by the

18   electrical outlets near his bunk … that allegation alone, without a description of the actual harm

19   suffered, does not suffice as a statement of injury that would, if proven, warrant an award of

20   damages." *Id*. at *2. It held that if a misplaced electrical outlet "had caused plaintiff an injury, he

21   would have described it," that plaintiff did not include a report of physical harm from hazardous

22   floor conditions, and that while he was "a bit more explicit about his lack of injury [from falling

23   ceiling tiles], "saying 'it is only a matter of time before Plaintiff is seriously injured by one,'"

24   pleading "'Only a matter of time' is not a viable theory of liability …." *Id*. at *3.

25        As noted above, the Court finds Plaintiff has sufficiently alleged injury as concerns

26   Plaintiff's inability to use his CPAP device. Thus, to the extent he seeks compensatory damages

27   on that basis, his claim should proceed. Nevertheless, even giving Plaintiff the benefit of every

28   doubt, his allegations of "pain, discomfort, suffering, and emotional and psychological harm" due

to Defendants' COVID policies are insufficient. Plaintiff does not allege any COVID related symptoms (over and above those specific to the CPAP device), nor does he contend he contracted COVID. Therefore, Plaintiff's allegations amount to emotional or mental suffering, in the absence of a physical injury, and cannot prevail. *See Oliver v. Keller*, 289 F.3d 623, 626-628 (9th Cir. 2002) (PLRA bars prisoner action for compensatory damages based solely on mental or emotional injury).

To summarize, Plaintiff's assertions of injuries related to his inability to use the CPAP device—severe headaches caused by a lack of oxygen and sleep deprivation—are cognizable. However, Plaintiff fails to sufficiently allege injuries related to a failure to mask or COVID-19 policies. And permitting amendment in that regard would be futile where Plaintiff has never alleged that he contracted COVID-19. *Hartmann*, 707 F.3d at 1130. As a result, the Court will recommend the motion be denied in part and granted in part.

### 3. Failure to State a Claim: Defendants Houston, Gilman & Delgadillo

Third, Defendants maintain Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Houston and Gilman for housing reassignments between March 19, 2020 and April 16, 2020, as well as his Eighth Amendment deliberate indifference claims against Defendants Gilman and Delgadillo, arising March 20, 2020, from their requirement that Plaintiff perform barbering duties, "should be dismissed to the extent that it is based on conduct alleged to have occurred before March 28, 2020." (Doc. 34 at 23.) They argue that before CIM went on lockdown it would not have been obvious to Defendants Houston, Gilman, or Delgadillo that any CIM inmate faced a substantial risk of COVID-19 infection. (*Id.*) Defendants assert that those individuals could not have been subjectively aware of the risk Plaintiff's faced prior to the CIM lockdown because Executive Order N-33-20 alone did not serve to notify them that Plaintiff faced a substantial risk of infection. The executive order does not refer to prisoners or barbering, nor does it disclose any medical or scientific information identifying those particularly vulnerable to COVID-19 infection. Hence, Defendants contend Houston, Gilman, and Delgadillo are entitled to dismissal of Plaintiff's Claim One based on their alleged disregard of Plaintiff's infection risk. (*Id*. at 24.)

1

2    Liberally construing the first amended complaint and affording Plaintiff the benefit of

3    every doubt, the undersigned finds Plaintiff has alleged sufficient facts to meet the subjective

4    prong of the deliberate indifference test, both as to the housing assignments and barbering duties

5    for the reasons explained at screening. (*See* Doc. 24 at 9-10.) The content and timing of the

6    governor's executive order does not change the analysis at this stage of the proceedings. Whether

7    Plaintiff can ultimately prove his allegations is a discussion for another day. The Court will

8    recommend Defendants' motion be denied on this basis.

9                    4.   Failure to State a Claim: Defendants Farooq and Torres

10   Fourth, Defendants contend Plaintiff fails to state a claim against Defendants Farooq and

11   Torres (Claim Two) because the only conduct alleged as to these individuals involves their

12   issuing a memorandum concerning suspension of the use of CPAP devices purportedly in

13   contradiction of a statewide memorandum. (Doc. 34 at 24-25.) The first amended complaint does

14   not allege Farooq or Torres directly treated or interacted with Plaintiff or were aware of his

15   medical conditions. (*Id*. at 25.) Defendants further argue Plaintiff's first amended complaint states

16   Defendant Lemus was the cause of Plaintiff's inability to use his CPAP device because Lemus

17   confiscated its electrical cord rendering it inoperable and "demonstrating that, from April 9, 2020

18   until April 14, 2020, the CPAP device worked, and in turn, Plaintiff had it." (*Id*.) Defendants

19   contend Farooq and Torres "cannot be liable [for] depriving Plaintiff of single-cell housing so

20   that he could continue using the CPAP according to a statewide directive issued the previous day"

21   and that neither was "responsible for adjusting Plaintiff's classification or custodial status to

22   implement the statewide directive at CIM" or ordering Plaintiff's double-celling. (*Id*.)

23   Plaintiff's first amended complaint identifies Defendant Torres as "Chief Medical

24   Surgeon" (Doc. 20 at 4) and Defendant Farooq as "Chief Medical Executive" (*id*. at 5) at CIM.

25   The Court agrees Plaintiff does not allege Farooq or Torres treated or interacted with Plaintiff,

26   nor does the first amended complaint specifically allege either was aware of Plaintiff's medical

27   conditions. As supervisors, Plaintiff must sufficiently allege that Farooq and Torres were

28   personally involved in the constitutional deprivation, or that there is a sufficient causal connection

between their wrongful conduct and the constitutional violation. *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013). "Under the latter theory, '[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy "itself is a repudiation of constitutional rights" and is "the moving force of a constitutional violation."' *Id.* (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (citation omitted).

Liberally construing the complaint and affording Plaintiff the benefit of every doubt, by asserting that Farooq and Torres issued an April 9, 2020 "memorandum directing all inmate[s] at CIM, including Plaintiff, to suspend all use of their C-Pap devices" without medical consultation, Plaintiff has sufficiently alleged they implemented a policy so deficient that the policy is a repudiation of constitutional rights (adequate health care) and was the moving force of the violation (an inability to use the prescribed CPAP device). While Plaintiff's first amended complaint does allege that Defendant Lemus confiscated the electrical cord to Plaintiff's CPAP device on April 14, 202, it could be reasonably inferred that Lemus's action was taken pursuant to the memorandum issued by Defendants Farooq and Torres. Notably too, the first amended complaint indicates Plaintiff was housed in "a makeshift dorm" lacking "accessible electrical outlets" that would permit the use of Plaintiff's CPAP device. To the extent Plaintiff's housing in the makeshift dorm prevented use of the CPAP device, and because the first amended complaint is not clear concerning the dates and specific locations pertaining to Plaintiff's housing "in four different buildings, on six separate occasions, including March 19th, and April 2nd, 8th, 11th, 14th, and 16th, 2020" (Doc. 20 at 9), there may be overlap affecting Plaintiff's ability to use the CPAP device even if he was in possession of the device prior to April 14, 2020, when Defendant Lemus confiscated its cord. Defendants' argument that neither Farooq nor Torres are responsible for Plaintiff's classification or custodial status goes beyond a consideration of the allegations in Plaintiff's first amended complaint. *See Manzarek*, 519 F.3d at 1030-31.

At this stage, the undersigned finds that Plaintiff's claim should be permitted to proceed. Whether he can ultimately prove Farooq and Torres implemented a constitutionally deficient policy concerning the suspension of CPAP devices is a determination for another day. The Court

1  will recommend Defendants' motion to dismiss be denied on this basis.

2  ### D. Fourteenth Amendment Equal Protection

3  Defendants argue Plaintiff fails to establish intentional discrimination by Defendant

4  Pilkerton, asserting his equal protection claim should be dismissed. (Doc. 34 at 25-26.)

5  Plaintiff's first amended complaint asserts that Defendant Gonzales issued Plaintiff and

6  another inmate "a disciplinary report for failing to socially distance from one another" but other

7  inmates in the building were not required to socially distance. (Doc. 20 at 16-17.) Plaintiff was

8  ultimately found guilty by Defendant Pilkerton following a disciplinary hearing and assessed a

9  30-day loss of credits and dayroom privileges. (*Id*. at 17-18.) Plaintiff also alleges Inmate Conley

10 was later notified that his disciplinary report was dismissed without a hearing and that Conley

11 was "found not guilty of his disciplinary for lack of evidence that social distancing was a

12 chargeable offense." (*Id*. at 18.)

13 Following screening, the Court found Plaintiff plausibly stated an equal protection

14 violation against Defendant Pilkerton, noting "Plaintiff has asserted that he and another inmate

15 were issued a disciplinary report for failing to socially distance and that Plaintiff was intentionally

16 treated differently than the other inmate … where there was no basis for the differen[ce] in

17 treatment and Conley was found not guilty following issuance of the same disciplinary report, but

18 Plaintiff was assessed loss of good time credits and dayroom privileges for the same conduct."

19 (Doc. 24 at 21; Doc. 26 [adopting findings].)

20 The Equal Protection Clause requires that all persons who are similarly situated should be

21 treated alike. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *City of Cleburne v.*

22 *Cleburne Living Center*, 473 U.S. 432, 439 (1985). To state an equal protection claim, a plaintiff

23 must show that the defendants acted with an intent or purpose to discriminate against him based

24 on membership in a protected class. *Lee*, 250 F.3d at 686; *Barren v. Harrington*, 152 F.3d 1193,

25 1194 (9th Cir. 1998), cert. denied, 525 U.S. 1154 (1999). Alternatively, a plaintiff must show that

26 similarly situated individuals were intentionally treated differently without a rational relationship

27 to a legitimate state purpose. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005);

28 *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Defendants contend Plaintiff's claim is premised on his having been found guilty of a disciplinary charge related to social distancing while the other inmate involved was found not guilty of the same. (Doc. 34 at 25-26.) They maintain Plaintiff's first amended complaint does not assert Pilkerton was involved in Inmate Conley's disciplinary action or aware of its outcome. (*Id.*) They note the first amended complaint "states specifically that inmate Conley's disciplinary action was subsequently dismissed without a hearing … which demonstrates that Pilkerton—at the time she disciplined Plaintiff—could not have been aware of the outcome of Conley's disciplinary action and, in turn, could not have intentionally treated Plaintiff differently." (*Id.*)

The dismissal of Conley's disciplinary report without a hearing might well demonstrate Pilkerton was not aware of the outcome of Conley's disciplinary matter, and thus could not have intentionally treated Plaintiff differently. However, Plaintiff's first amended complaint also states Conley was "found not guilty of his disciplinary for lack of evidence that social distancing was a chargeable offense." (Doc. 20 at 18.) To the extent a dismissal and a finding of not guilty appear contradictory, liberally construing the first amended complaint and affording Plaintiff the benefit of every doubt, the Court finds that Plaintiff has sufficiently alleged an equal protection violation because it is reasonable to infer from his allegations that Pilkerton was aware of the Conley disciplinary proceedings and acted with discriminatory motive. *Iqbal*, 556 U.S. at 678; *Balistreri*, 901 F.2d at 699; *Hebbe*, 627 F.3d at 342. Therefore, the Court will recommend Defendants' motion to dismiss Plaintiff's equal protection violation be denied.

### E. Eighth Amendment Failure to Intervene

Defendants contend Plaintiff's failure to intervene claim against Defendant Pilkerton (Claim Four) must be dismissed because the first amended complaint itself demonstrates that Pilkerton did not have an opportunity to intercede. (Doc. 34 at 27.) Defendants point to Plaintiff's assertion that the assault "was completely non provoked," and maintain that in the absence of provocation or other facts suggesting awareness, Plaintiff has not shown Pilkerton was aware that the unnamed officers "were going to use force and, thus, [that Pilkerton] was in a position to stop those officers' use of force on Plaintiff." (*Id.*) Defendants maintain the first amended complaint does not allege Pilkerton witnessed the use of force and that it indicates the force was employed

1    "as Plaintiff 'was being physically removed from [Pilkerton]'s office." (*Id.*)

2            Plaintiff's first amended complaint alleges he was assaulted "in the presence of Pilkerton"

3    (Doc. 20 at 19), as he was "being physically removed from [her] office" (*id.*), and that Pilkerton

4    "*personally observed* the assault on Plaintiff ..." (*id.* at 20, italics added).  From these facts it can

5    be reasonably inferred that Pilkerton was aware of the unnamed officers' actions and that she had

6    an opportunity to intervene. The Court is not persuaded that Plaintiff's statement that the "assault

7    on plaintiff was completely non provoked" equates to a demonstration that Pilkerton lacked such

8    an opportunity. Unlike the allegations in *Lopez v. City of Anaheim*, No. SACV 22-1351 JVS

9    (ADSx), 2023 WL 4681059, at \*5 (C.D. Cal. June 7, 2023), here it is not clear the assault

10   occurred "'immediately' and 'without warning'" or that Pilkerton had no realistic opportunity to

11   intercede. The Court will recommend Defendants' motion be denied on this basis.

12                   *F.  Injunctive Relief re Rules Violation Report Guilt Finding*

13           In his first amended complaint, Plaintiff seeks to "Require Defendants to Reverse the

14   Rules Violations Guilty finding." (Doc. 20 at 7.)

15           Defendants contend Plaintiff's request for an injunction reversing the guilty finding for

16   failing to socially distance is not cognizable under the PLRA. (Doc. 34 at 27-28.) They maintain

17   that reversing the guilty finding "would necessarily 'extend ... further than [is] necessary to

18   correct' ... either" the due process or the equal protection violation asserted. (*Id.* at 28.) Rather,

19   they assert the only cognizable injunction would involve an administrative rehearing of the

20   disciplinary hearing consistent with the Fourteenth Amendment. (*Id.*)

21           Requests for prospective relief are limited by 18 U.S.C. § 3626(a)(1)(A) of the PLRA,

22   which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than

23   necessary to correct the violation of the Federal right, and is the least intrusive means necessary to

24   correct the violation of the Federal right."  Subsection (B) states a court "shall not order any

25   prospective relief ..., unless [¶] (i) Federal law requires such relief to be ordered in violation of

26   State or local law; [¶] (ii) the relief is necessary to correct the violation of a Federal right; and [¶]

27   (iii) no other relief will correct the violation of the Federal right."

28           To the extent Plaintiff's first amended complaint seeks prospective relief in the form of a

1   reversal of the guilty finding, the Court notes that should Plaintiff prevail on his Fourteenth

2   Amendment claims, the remedy for an unfair hearing is another hearing. In other words, an order

3   from this Court entering a reversal of the rule violation report would amount to improper

4   prospective relief because (1) federal law does not require the relief be ordered in violation of

5   state or local law, (2) the relief is not necessary to correct the violation, and (3) other relief is

6   available in the form of another hearing. 18 U.S.C. § 3626(a)(1)(B); *see, e.g., Shotwell v. Brandt*,

7   No. C 10-5232 CW (PR), 2012 WL 6569402, at \*3 (N.D. Cal. Dec. 17, 2012) ("California state

8   prison regulations allow for the reissuance and rehearing of disciplinary charges after a prior

9   hearing is found procedurally inadequate. … This complies with the demands of federal due

10  process, which requires that a violation of procedural due process be corrected procedurally, not

11  by reinstatement of the substantive right. That is, the remedy for an unfair hearing is another

12  hearing" (citing *Raditch v. United States*, 929 F.2d 478, 481 (9th Cir. 1991)).

13           The Court will recommend Defendants' motion to dismiss be granted.

14                    ***G.  Plaintiff's Third Claim: Eighth Amendment Failure to Protect***

15           Plaintiff's third claim for relief, in relevant part, asserts Defendants Gonzales and

16  Pilkerton failed to protect Plaintiff by refusing to wear masks on numerous occasions. (Doc. 20 at

17  16.) Following screening of the first amended complaint, the undersigned found Plaintiff had

18  plausibly alleged Eighth Amendment failure to protect claims against Defendants Gonzales and

19  Pilkerton concerning their refusals to wear a mask and follow CDCR directives. (*See* Doc. 24 at

20  21.) However, because Plaintiff fails to allege that he contracted COVID-19, he fails to state

21  Eighth Amendment failure to protect claims against Defendants Gonzales and Pilkerton. *See*

22  *Jackson*, 2023 WL 8257863, at \*5. Hence, the Court will recommend the Eighth Amendment

23  failure to protect claims against Gonzales and Pilkerton be dismissed without leave to amend

24  because amendment would be futile. *Hartmann*, 707 F.3d at 1130. It will also recommend that

25  Gonzales be dismissed from this action because the Eighth Amendment failure to protect claim

26  was the only claim proceeding against Gonzales in this action.

27  ///

28  ///

## IV.    CONCLUSION AND RECOMMENDATIONS

For the reasons stated above, the Court **RECOMMENDS** as follows:

1. Defendants' motion to dismiss for a lack of subject matter jurisdiction concerning compensatory damages be DENIED;

2. Defendants' motion to dismiss for lack of subject matter jurisdiction concerning injunctive relief be GRANTED;

3. Defendants' motion to dismiss the injunctive relief claims against the CIM Defendants (Houston, Gilman, Delgadillo, Lemus, Farooq, Torres) be GRANTED without leave to amend;

4. Defendants' motion to dismiss for a failure to state a claim concerning an injury related to COVID-19 be DENIED in part and GRANTED in part:

    a. Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims should proceed against Defendants Houston, Delgadillo, and Gilman;

    b. Plaintiff's Eighth Amendment failure to protect claims concerning masking and feeding against Defendants Houston, Delgadillo, Gilman, and Lemus should be dismissed without leave to amend;

5. Defendants' motion to dismiss for failure to state a claim concerning compensatory damages be DENIED in part and GRANTED in part:

    a. Plaintiff's compensatory damages claims concerning injuries related to his inability to use the CPAP device should proceed;

    b. Plaintiff's compensatory damages claims concerning failures to mask or COVID-19 policies should be dismissed without leave to amend;

6. Defendants' motion to dismiss for failure to state a claim concerning Plaintiff's allegations, involving housing assignments and barbering duties, against Defendants Houston, Gilman, and Delgadillo be DENIED;

7. Defendants' motion to dismiss for failure to state a claim concerning Plaintiff's allegations against Defendants Farooq and Torres be DENIED;

8. Defendants' motion to dismiss Plaintiff's Fourteenth Amendment equal protection

1    claim be DENIED;

2    9.  Defendants' motion to dismiss Plaintiff's Eighth Amendment failure to intervene

3        claim against Defendant Pilkerton be DENIED;

4    10. Defendants' motion concerning Plaintiff's request for prospective injunctive relief be

5        GRANTED;

6    11. Plaintiff's Eighth Amendment failure to protect claims against Defendants Gonzales

7        and Pilkerton for failing to mask should be DISMISSED without leave to amend;

8    12. Defendant Gonzales should be DISMISSED from this action; and

9    13. Defendants be DIRECTED to file an answer to Plaintiff's first amended complaint and

10       in accordance with these findings, within 30 days, assuming these findings are adopted

11       by the assigned district judge.

12       These Findings and Recommendations will be submitted to the district judge assigned to

13   this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these

14   Findings and Recommendations, a party may file written objections with the Court. The

15   document should be captioned, "Objections to Magistrate Judge's Findings and

16   Recommendations." Failure to file objections within the specified time may result in waiver of

17   rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v.*

18   *Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

19   IT IS SO ORDERED.

20       Dated:   **August 12, 2024**                    _____

21                                                       UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28